[No. 3224.]

THOS. M. CHILDERS v. THE STATE.

1. CONTINUANCE—DILIGENCE.—Failing to show the exercise of due diligence in the effort to secure the attendance of the alleged absent witnesses, an application for a continuance is properly refused.

2. INDICTMENT—EVIDENCE.—An indictment for swindling having unnecessarily described the money obtained by fraudulent representations to be "good, lawful and current money of the United States of America," it was essential to the validity of the conviction that the money be proved as alleged.

3. SWINDLING—FACT CASE.—See the opinion *in extenso* for evidence *held* insufficient to sustain a conviction for swindling.

APPEAL from the District Court of Travis. Tried below before the Hon. A. S. Walker.

The conviction was for swindling the State of Texas in the amount of one hundred and fifty dollars. Five years in the penitentiary was the punishment awarded the appellant.

*George S. Walton* and *Robt. G. West,* for the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

WILLSON, JUDGE. 1. Several special exceptions to the indictment were made and overruled in the trial court. These exceptions are not insisted upon in this court by defendant's counsel, and we shall therefore not discuss them. We will say, however, with regard to the indictment, that we have carefully examined it in the light of the exceptions made to it, and we think it is a good indictment in all essential respects. It charges the offense of

swindling very fully and accurately, specifically informing the defendant of the matters which he is called upon to answer.

2. It was not error to overrule the defendant's application for a continuance, because said application fails to show that the requisite diligence had been used by the defendant to obtain his witnesses.

3. The defendant's counsel rely mainly for a reversal of the judgment upon the ground that the verdict of the jury is without evidence to support it. It is alleged in the indictment, substantially, that the defendant acquired from the State of Texas one hundred dollars, in " good, lawful and current money of the United States of America, being currency bills"; that he acquirred this money by means of false and fraudulent representations and pretenses made to certain officers of said State, to-wit: R. B. Hubbard, Governor; I. G. Searcy, Secretary of State; S. H. Darden, Comptroller; and A. J. Dorn, Treasurer, setting forth fully and in detail the said false and fraudulent representations and pretenses. These representations and pretenses, as set forth in the indictment, consisted mainly of certain written instruments, as follows:

1. A pretended receipt purporting to be executed by J. B. Tyers, sheriff of Limestone county, acknowledging that said sheriff had received from Thomas M. Childers the body of one Wood Trammel, charged with murder.

2. The certificate of I. G. Searcy, Secretary of State, that a reward of one hundred and fifty dollars had been offered by the Governor of Texas for the arrest and delivery of Wood Trammel to the sheriff of Limestone county.

3. An account in favor of Thomas M. Childers against the State of Texas for one hundred and fifty dollars for the arrest and delivery of said Wood Trammel to the sheriff of Limestone county, approved for said amount by R. B. Hubbard, Governor.

4. A treasury warrant, issued by S. H. Darden, Comptroller, to T. M. Childers, for the said sum of one hundred and and fifty dollars for the arrest of said Wood Trammel, and endorsed " Thomas M. Childers," and upon which warrant, it is alleged, the defendant obtained from the Treasury of the State the said sum of one hundred and fifty dollars.

These papers were all introduced in evidence by the State, without objection on the part of the defendant. What was the legal effect of this testimony? The indictment was, in part, founded upon these written instruments, and it was charged

that the defendant executed the account and endorsed the warrant. It is not charged, however, that he executed the receipt; but it is charged with reference to that instrument that it was false and forged, and that the defendant, knowing it to be such, used it in obtaining the money. These instruments, having been read in evidence without objection on the part of the defendant, sufficiently proved that the defendant was the person who made the account and who endorsed the warrant. But does this testimony prove that he presented the receipt to the Secretary of State and upon the statements therein contained obtained from that officer the certificate, and upon these papers obtained from the Governor the approval of the account, and upon the approved account obtained the warrant, and upon that warrant obtained the money? That he made the account and endorsed the warrant, and that the warrant is found in the Treasurer's office, cancelled, are circumstances tending to prove that the defendant is the person who, by the means alleged, obtained the money. But can it be held that this evidence is sufficient to identify the defendant as the man who thus acquired the money? To our minds, it is very unsatisfactory and uncertain—too much so, we think, to warrant the sanction of this court. If the defendant was the man who presented the receipt to the Governor and Secretary of State, and obtained from the Governor the approval of the account, and made to these officers the representations alleged in the indictment, it is reasonable to suppose that these officers would have some recollection of the transaction, and might be able to identify the defendant. If he was the man who obtained the warrant from the Comptroller, and who obtained from the Treasurer the money upon said warrant, it is reasonable to suppose that these officers, or some of their clerks, would be able to identify him, and to prove beyond question that he thus obtained the money.

But we have no such proof in this case, nor does there appear to have been any effort on the part of the prosecution to make such proof or to account for the absence of it. It is not proved by any witness that the defendant at any time ever made any representations or used any pretenses to any of the officers, as charged in the indictment. There is a total want of proof of these allegations, except that offered by the papers themselves, and in our opinion these papers do not supply the absence of such proof. It devolved upon the State to make this proof, and to make it by the best evidence that the nature of the case would

admit of, or to account for the absence of such evidence. In this case the best evidence of these facts would be the testimony of the persons to whom the alleged false and fraudulent representations and pretenses were made, and from whom the money was obtained; and this evidence was not adduced by the State, nor is any reason shown why it was not adduced. It does not appear that any witness who testified upon the trial was asked to identify the defendant as the person who perpetrated the swindle, and yet there were witnesses who testified in the case, who might reasonably be supposed to be able to identify him as the guilty party. As presented to this court, the evidence does not support the allegations of the indictment with that certainty demanded by the law in prosecutions for crime, and, in our judgment, is insufficient to support this conviction.

4. There is no direct evidence that the defendant received the money upon the warrant, and no effort seems to have been made by the State to prove by direct evidence that he did receive it. Circumstances tend to show that the warrant was paid, and paid to the defendant. These circumstances are that the warrant is found cancelled in the treasurer's office, with the name of the defendant endorsed thereon, the rule of that office being to pay a warrant only to the person in whose favor it was drawn, and to require him at the time of payment to endorse it, and when so paid, to mark it cancelled and file it among the archives of the office. If it had been shown by the State that no better evidence of payment than this could be produced, then this might be considered sufficient, but the facts show with reasonable certainty that better evidence of the payment of the warrant to the defendant does exist, and no reason has been shown why it was not produced. Such being the case, we cannot say that it has been proved as the law requires. But, even were the proof upon this point sufficient, there is no proof of the *kind* of money paid to the defendant on the warrant. It is alleged in the indictment that the money fraudulently acquired by him was " good, lawful and current money of the United States of America, being currency bills." It was unnecessary to thus particularly describe the money obtained. It would have been sufficient to have alleged that it was one hundred and fifty dollars in money. But the pleader, having unnecessarily described the money, thereby limited a matter material to the charge, and the description became essential to the identity of the money, and under the long established rules of criminal pleading such

description is material and must be proved as laid. (*Warring-ton* v. *The State*, 1 Texas Ct. App., 168; *Rose* v. *The State*, Id., 400; *Soria* v. *The State*, 2 Texas Ct. App., 297; *Hampton* v. *The State*, 5 Texas Ct. App., 463; 1 Bish. Crim. Prac., sec. 485; 1 Whar. Am. Crim. Law, sec. 629.)

True, the warrant calls for "one hundred and fifty currency dollars," but there is no evidence that "currency dollars" were paid in discharge of the warrants, and that these currency dollars were "good, lawful and current money of the United States of America," as alleged in the indictment. The warrant may have been paid in gold or silver coin, and, if so, certainly the allegation in the indictment would not be sustained. This failure on the part of the prosecution to sustain, by proof, the descriptive averment as to the money is of itself fatal to the conviction.

Because, in our opinion, the evidence does not support the conviction, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered June 25, 1884.